COURT OF CHANCERY
OF THE
STATE OF DELAWARE

MORGAN T. ZURN
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report:  March 15, 2018
Draft Report:  December 14, 2017
Date Submitted:  November 28, 2017

Bayard J. Snyder, Esquire
Snyder & Associates, P.A.
3801 Kennett Pike, Suite 201, Bldg. C
Wilmington, DE 19807

Ms. Gail Frances Riblett
2629 Bardell Drive
Wilmington, DE 19808
gailzz@comcast.net

      Re:   *Riblett v. Riblett*
            C.A. No. 12786-MZ

Dear Mr. Snyder and Ms. Riblett:

In this action, a mother seeks rescission of a deed and title transfers purporting to transfer one-half of her interest in real property, two vehicles, and two trailers to her daughter.  The parties agreed to mediate their dispute.  The daughter moved to dismiss based on an executed settlement agreement, and in response her mother sought enforcement of a later, superseding settlement agreement that was unsigned.

In this final report, I recommend the Court deny the mother's request to force the daughter to sign the later, unsigned settlement agreement based on express language in the mediation agreement requiring any final agreement to be signed, and deny the mother's request to fix alleged clerical errors in the executed agreement under Court of Chancery Rule 60(a). I also recommend the Court grant the daughter's motion to dismiss.

## I.    Background[1]

Petitioner JoAnn Marie Riblett ("JoAnn") and her husband Harry C. Riblett ("Harry") owned real property known as 416 Riblett Lane, Wilmington Delaware 19808 ("the Property") as tenants by the entirety. On April 7, 1993, JoAnn executed a will that left all her real and personal property equally to her three children: Respondent Gail Riblett ("Gail"), and JoAnn's two sons. Harry died on December 23, 2012, making JoAnn the sole owner of the Property, as well as a 1929 Ford Model A, a 2004 Dodge Caravan, and two trailers. On April 25, 2013, JoAnn executed a deed conveying the Property to herself and Gail as joint tenants with right of survivorship ("the Deed"). JoAnn also transferred one-half ownership interest in the vehicles and trailers to Gail ("the Title Transfers").

---

[1] In this family dispute, I use first names in pursuit of clarity; I intend no familiarity or disrespect.

On September 29, 2016, JoAnn filed a verified petition seeking rescission of the Deed and Title Transfers on the basis of equitable fraud.  JoAnn alleges that Gail, a law school graduate, misrepresented to JoAnn that two names were required on the titles to the Property, vehicles, and trailers for JoAnn's ownership to remain valid after Harry's death.  JoAnn alleges she wants her property to be distributed as set forth in her will:  one-third to Gail, and one-third to each of JoAnn's sons.  Gail answered the petition on October 14, 2016, alleging she assisted JoAnn in executing the Deed and Title Transfers at JoAnn's request so that Gail, who was named executrix in JoAnn's will, would have sufficient administrative powers to carry out JoAnn's wishes.  Gail also alleged extensive familial strife surrounding these and other issues.  JoAnn is represented by counsel; Gail is proceeding *pro se*.

Gail and JoAnn voluntarily mediated their dispute on June 12, 2017, subject to a mediation agreement providing, "If a settlement is reached, the agreement shall be reduced to writing and when signed, shall be binding upon all parties to the agreement and become part of the court record."[2]  They signed a settlement agreement dated that same day ("the First Agreement").  It states, in relevant part:

---

[2] Reply ¶ 8.

> Gail Riblett shall execute a Quitclaim Deed and Transfer Tax Affidavits conveying any interest she may have in 416 Riblett Lane (the "Property") back to JoAnn Riblett.
>
> JoAnn Riblett agrees that the Property shall be divided 1/3, 1/3, 1/3 to each of her three (3) children and any references Joann's Trust (sic) or will to the contrary are void.[3]

On June 13, 2017, the mediator emailed the parties identifying a possible ambiguity in the second quoted paragraph's use of the word "Property," defined as 416 Riblett Lane, and suggesting replacing that second usage of "the Property" with "her Estate."[4]

Gail responded, via email, that she agreed to this change.[5] The mediator drafted and circulated another agreement incorporating this change ("the Second Agreement"), but Gail did not sign it.[6] Gail contends that although she initially agreed to the change, she subsequently concluded it had substantive meaning so she refused to sign the Second Agreement incorporating it.[7]

---

[3] Mot. Ex.; Resp. Ex. A.
[4] Resp. Ex. B; D.I. 17; Reply ¶ 5. The mediator asserts the parties agreed that JoAnn "was to have sole ownership of her primary residence (416 Riblett Lane)" and "that JoAnn's Estate (not just the primary residence) would be divided equally between the three siblings." D.I. 17.
[5] Resp. Ex. B; D.I. 17; *see* Reply ¶¶ 5-7.
[6] Resp. Exs. B, C; D.I. 17; Reply ¶¶ 7-10.
[7] Reply at 1; Ans. to Exceptions at 1.

On September 19, 2017, Gail filed a motion to dismiss alleging she and

JoAnn had reached a settlement agreement memorialized in the First Agreement,

that Gail had performed her obligations thereunder, and that JoAnn should dismiss

her claims. The parties briefed Gail's motion and the mediator provided a

submission as well. JoAnn's response asked the Court to "order [Gail] to sign the

Amended Settlement Agreement."[8] I issued a draft report on December 14, 2017.

JoAnn took exception and the parties briefed those exceptions. This is my final

report.

## II.    Analysis

While the issues pending before me were presented in connection with

Gail's *pro se* motion, titled "Motion to Dismiss," each party requests enforcement

of a settlement agreement and has supplied documentary evidence in support, so I

apply the legal standard for a motion to enforce a settlement agreement.

Delaware courts encourage negotiated resolutions to contested cases, and for

that reason, among many others, settlement agreements are enforceable as a

contract.[9] The party seeking to enforce an agreement bears the burden of proving

---

[8] Pet'r Resp. to Mot. to Dismiss at 3; *accord*, Pet'r Br. on Exceptions at 5 (noting the "question[] involved" is whether the Court should "order Respondent to sign the Second Agreement").
[9] *Schwartz v. Chase,* 2010 WL 2601608, at *4 (Del. Ch. Jun. 29, 2010); *Asten, Inc. v. Wangner Sys. Corp.,* 1999 WL 803965, at *1 (Del. Ch. Sept. 23, 1999).

the existence of a contract by a preponderance of the evidence.[10]  In determining

whether JoAnn or Gail has met her burden, I must inquire:

> whether a reasonable negotiator in the position of one asserting the
> existence of a contract would have concluded, in that setting, that the
> agreement reached constituted agreement on all of the terms that the
> parties themselves regarded as essential and thus that that agreement
> concluded the negotiations.[11]

> Where a settlement agreement has been reached, the fact, alone, that it
> was the understanding that the contract should be formally drawn up
> and executed, does not leave the transaction incomplete and without
> binding force, in the absence of a *positive agreement* that it should not
> be binding until so reduced to writing and formally executed.
> Therefore, the question is whether the parties positively agreed that
> there will be no binding contract until the document is executed.[12]

"Where it is dearly [sic] understood that the terms of a proposed contract, though

tentatively agreed on, shall be reduced to writing and signed before it shall be

considered as complete and binding on the parties, there is no final contract until

that is done."[13]

Gail and JoAnn's mediation agreement contains a stated condition that no

settlement agreement would be binding until reduced to writing and formally

---

[10] *Schwartz,* 2010 WL 2601608 at *4.

[11] *Id.*

[12] *Whittington v. Dragon Group LLC*, 2013 WL 1821615, at *3 (Del. Ch. May 1, 2013) (internal citations and quotations omitted).

[13] *Universal Prods. Co. v. Emerson*, 179 A. 387, 394 (Del. 1935) (citing Williston on Contracts, § 28).

executed. The parties essentially agreed a party could change her mind in mediation until she signed her name. In addition to the specific mediation agreement here, the Delaware Supreme Court has cautioned generally that "[c]ourts should not enforce a mediation agreement absent a written document signed by the parties and a mediator."[14] In evaluating the parties' discussions about settlement terms after the First Agreement was signed, which were guided by the mediator, I find they are in the context of mediation and governed by the mediation agreement. The Second Agreement was never signed, so it is not binding.[15] Gail's emailed response accepting the proposed edits does not satisfy the mediation agreement's positive requirement that any settlement be reduced to a signed writing to take effect.[16] Accordingly, I recommend the Court deny JoAnn's request to compel Gail to sign the Second Agreement. The First Agreement remains in effect.[17]

---

[14] *Capano v. State ex rel. Brady*, 2003 WL 22227556, at *1 (Del. Sept. 25, 2003).

[15] *See id.*; *Whittington*, 2013 WL 1821615 at *3.

[16] Resp. Ex. B.

[17] This report does not construe or interpret the First Agreement's use of the word "Property," evaluate whether that usage introduces any ambiguity, or preclude potential future litigation regarding the interpretation of the First Agreement.

On exception, JoAnn asserts the relief she seeks is not to enforce an entirely new settlement agreement, but rather, to fix a clerical error in the signed agreement under Court of Chancery Rule 60(a).[18]  That Rule provides:

> *Clerical mistakes*.  Clerical mistakes in judgments, order or other parts of the record and errors therein arising from oversight or omission may be corrected by the Court at any time of its own initiative or on the motion of any party and after such notice, if any, as the Court orders.

JoAnn relies on *In re Appeal of Merrill Lynch, Pierce, Fenner & Smith, Inc.*, in which the Delaware Supreme Court reviewed a party's request to modify a Court of Chancery "Order and Judgment" based on the parties' "Stipulation of Settlement and Compromise" where that Order contained ambiguous language as a result of a lawyer error in draftsmanship.[19]  The Order failed to specify which among two class actions and one derivative action was included in its scope.[20]  The Delaware Supreme Court concluded that amending the Order to resolve its ambiguity "is precisely the relief intended to be afforded by Rule 60(a)."[21]

---

[18] JoAnn also argued on exception that my draft report improperly relied on *Carter Farm, LLC v. New Castle County*, 2014 WL 3555958 (Del. Ch. July 17, 2014), as the reopened settlement negotiations in that case were more substantive and intentional than the parties' discussions following the First Agreement in this case.  This final report omits that analysis but reaches the same conclusion.

[19] 1987 WL 4633, at *1-3 (Del. Oct. 26, 1987).

[20] *Id.* at *2-3.

[21] *Id.* at *3.

There is no ambiguous Court order in this case to modify. The issue JoAnn

seeks to rectify is in a settlement agreement, which is a contract between JoAnn

and Gail. Rule 60 is not available to JoAnn. Instead, to set aside or modify the

settlement, JoAnn would have to satisfy the requirements for setting aside or

modifying a contract.[22]

> To obtain reformation of a contract, a plaintiff must show that:
>
> an agreement has been made, or a transaction has been entered into or
> determined upon, as intended by all parties interested, but in reducing
> such agreement or transaction to writing, either through
> the mistake common to both parties, or through the mistake of the
> plaintiff accompanied by the fraudulent knowledge and procurement
> of the defendant, the written instrument fails to express the real
> agreement or transaction.[23]

Allegations of fraud or mistake must be pled with particularity.[24] A party seeking

reformation must establish the need for the remedy by clear and convincing

evidence.[25]

It may be that JoAnn can plead with particularity, and prove by clear and

convincing evidence, that the First Agreement should be reformed due to mistake.

But JoAnn "has not only failed to meet the pleading requirements for reformation,

---

[22] *See Gammage v. Ellis*, 1986 WL 11532, at *2 (Del. Ch. Oct. 16, 1986).
[23] *Lions Gate Ent. Corp. v. Image Ent. Inc.*, 2006 WL 1668051, at *8 (Del. Ch. June 5, 2006)
((citing *Waggoner v. Laster*, 581 A.2d 1127, 1135 (Del. 1990)).
[24] Ch. Ct. R. 9(b).
[25] *Lions Gate*, 2006 WL 1668051 at *8.

[she] has actively and expressly eschewed that cause of action here."[26]  JoAnn asked this Court to order Gail to sign the Second Agreement based on the parties' emails about the Second Agreement, and did so in an answering brief and on exception.  This is different than affirmatively requesting and pleading reformation of the First Agreement to express the parties' allegedly different intent.  JoAnn also asked this Court to modify the First Agreement under Rule 60(a), but the First Agreement is a contract between JoAnn and Gail and not a Court order or judgment.  JoAnn has not asked this Court to reform the First Agreement under the law of contract.

I interpret Gail's short *pro se* motion as seeking dismissal of this action because she performed under the First Agreement.  The First Agreement states that this action "will be dismissed" in exchange for, *inter alia*, Gail retitling the Property, one vehicle, and one trailer in JoAnn's name.[27]  JoAnn's response to Gail's motion does not dispute that Gail performed under the First Agreement.  It is JoAnn's burden to request and justify an order compelling specific performance if Gail breached the First Agreement, and JoAnn has not done so.[28]  The binding

---

[26] *See Travelers Cas. & Sur. Co. v. Sequa Corp.*, 2012 WL 1931322, at n.24 (Del. Ch. May 29, 2012) (quoting *James River-Pennington Inc. v. CRSS Capital, Inc.*, 1995 WL 106554, at *7 (Del. Ch. Mar. 6, 1995)).

[27] Mot. Ex.

[28] *See Carter Farm, LLC v. New Castle County*, 2014 WL 3555958, at *8 (Del. Ch. July 17, 2014).

First Agreement warrants dismissal of this action. I recommend the Court grant Gail's motion to dismiss.

## III.  Conclusion

For the foregoing reasons, I recommend the Court grant the respondent's motion to dismiss, and deny the petitioner's requests (i) to compel the respondent to sign a second settlement agreement, and (ii) to modify a signed settlement agreement under Court of Chancery Rule 60(a).  This is a final report under Court of Chancery Rule 144.

Respectfully,

*/s/ Morgan T. Zurn*

Master in Chancery